UNITED STATES, Appellant

v

JAMES A. McCALL, Seaman Recruit,
U. S. Navy, Appellee

11 USCMA 270, 29 CMR 86

No. 13,535

Decided February 19, 1960

*Commander Benjamin H. Berry,* USN, argued the cause for Appellant, United States. With him on the brief was *Major Elvin R. Coon, Jr.,* USMC.

*Lieutenant Colonel E. W. Johnson,* USMC, argued the cause for Appellee, Accused.

## Opinion of the Court

HOMER FERGUSON, Judge:

Tried by special court-martial,[1] the accused pleaded guilty to dereliction of duty and not guilty to a specification setting forth a disobedience of a lawful general order, both offenses being charged as violations of Uniform Code of Military Justice, Article 92, 10 USC § 892. He was found guilty as charged and sentenced to bad-conduct discharge, forfeiture of $50.00 per month for two months, and confinement at hard labor for two months. The convening authority approved the findings and sentence. The supervisory authority set aside the findings of guilty relating to the alleged violation of a general order and probationally suspended the bad-conduct discharge. A Navy board of review dismissed the Charge and the remaining specification on the basis that it set forth no offense. The Judge Advocate General certified to this Court the following question concerning the board's action:

"Does Specification 1 of the Charge allege an offense against the Uniform Code of Military Justice?"

[1] SPCM NCM 59-01325

The specification involved provides:

"In that James Arnold McCall, seaman recruit, U. S. Navy, U. S. S. BUTNER (T–AP 113), on board the U. S. S. BUTNER (T–AP 113), on or about 0145 hours, 19 May 1959, was derelict in the performance of his duties in that he was found lying down and asleep while on watch as the after Steering Helmsman."

At the outset, we note that, regardless of the plea thereto, a specification must include within its language, either expressly or by fair implication, all of the requisite elements of the offense sought to be charged. United States v Simpson, 2 USCMA 493, 9 CMR 123; United States v Sell, 3 USCMA 202, 11 CMR 202; United States v Mamaluy, 10 USCMA 102, 27 CMR 176. The delict involved here is dereliction in the performance of an assigned duty. The elements of this offense involve no more than the assignment to the accused of a particular task and his culpable behavior in its execution. Code, *supra,* Article 92(3); Manual for Courts-Martial, United

**271**

States, 1951, paragraph 171c. With these principles in mind, we turn to a consideration of the certified issue.

The sole attack made upon the sufficiency of the specification is based upon its alleged failure expressly or impliedly to set forth the duty of the accused to remain alert while on watch as the after Steering Helmsman. Thus, counsel for the accused argues that the mere allegation that the accused was "on watch" involves no responsibility on his part to remain awake as, in the discussion of the analogous offense of sleeping while posted as a sentinel or lookout, in violation of Code, supra, Article 113, 10 USC § 913, the Manual, supra, provides at page 348, that such misconduct does not include "an officer or enlisted person . . . of a ship's watch, not posted or performing the duties of a sentinel or lookout, nor does it include a person whose duties as a watchman or attendant do not require that he be constantly alert." Moreover, it is contended that the term "watch" is used in the Navy to designate a variety of personnel assignments aboard ship which permit an individual to slumber. Thus, counsel concludes the use in the specification here of the phrase "on watch" cannot imply any duty on accused's part to stay awake. These arguments ignore the nature of the charged offense and the additional allegation that accused was on watch "as the after Steering Helmsman."

It may be true that a statement to the effect that an individual is "on watch" or is a member "of the ■■■■■■ ■ watch" is insufficient to permit the inference of a duty to remain alert. When, however, his particular assignment is shown in the specification as that of the after Steering Helmsman, the necessity for remaining constantly attentive is clearly implied. While a naval vessel's steering is normally handled at the main helm, the after steering helm is provided as a safety feature in the event that the main apparatus is disabled. It is not difficult to see that an emergency may arise at any time which will require immediate action on the part of the after steering helmsman in order to prevent the hazarding of the vessel involved. This necessarily requires that the helmsman remain awake at all times while he is assigned to this duty. Thus, it is certain that the allegation of specific duty assignment within this specification by implication sets forth the need for accused's alertness. See, generally, Truesdale, *Sleeping on Watch*, The JAG Journal, November 1953, page 9. Accordingly, the certified question is answered in the affirmative.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Navy for further proceedings consistent with this opinion.

Chief Judge QUINN and Judge LATIMER concur.