UNITED STATES, Appellee

v

FARNUM T. REID, Boatswain's Mate, First Class,
U. S. Navy, Appellant

12 USCMA 497, 31 CMR 83

No. 14,892

November 9, 1961

*Fred W. Shields, Esquire,* argued the cause for Appellant, Accused. With him on the brief was *Captain John P. Gibbons.*

*Lieutenant Harold J. Wallum* argued the cause for Appellee, United States. With him on the brief was *Commander Rice M. Youell, Jr.*

## Opinion of the Court

FERGUSON, Judge:

Tried by general court-martial, the accused was found guilty of attempting to sell the contents of a promotion examination, in violation of Uniform Code of Military Justice, Article 80, 10 USC § 880; three specifications of conspiracy to sell such examinations, in violation of Code, supra, Article 81, 10 USC· § 881; a charge of possession of such examinations in a manner contrary to Navy Regulations, in violation of Code, supra, Article 92, 10 USC § 892; and the sale of an examination, in violation of Code, supra, Article 108, 10 USC § 908. He was sentenced to a bad-conduct discharge, forfeiture of $72.00 per month for six months, confinement at hard labor for six months, and reduction to the grade of seaman recruit. The convening authority set aside the findings of guilty with respect to one of the conspiracy counts but approved the sentence. The board of review found the evidence factually insufficient to support the charge of selling a promotion examination and set it aside. It reassessed the sentence and approved only so much as provided for confinement at hard labor for six months,

forfeiture of $72.00 per month for six months, and reduction to the next inferior grade. We granted accused's petition for review on several issues which will be hereinafter discussed.

At the outset, we are met by an assertion that this Court does not have jurisdiction to hear the accused's appeal in view of the reduction of the sentence by the board of review. The Government argues that we may hear no case on petition unless the sentence, as approved by a board of review, includes a punitive discharge or extends to confinement at hard labor for one year or more.

. Code, supra, Article 67, 10 USC § 867, sets forth the basic charter of this Court's appellate authority. It provides pertinently:

"(b) The Court of Military Appeals shall review the record in—
(1) all cases in which the sentence, as affirmed by a board of review, affects a general or flag officer or extends to death;
(2) all cases reviewed by a board of review which the Judge Advocate General orders sent to the Court of Military Appeals for review; and
(3) *all cases reviewed by a board of review in which, upon petition of the accused and on good cause shown, the Court of Military Appeals has granted a review.*" [Emphasis supplied.]

From the foregoing, it would seem that the authority of this Court to review an accused's case upon petition depends upon whether the cause is one which has been reviewed by a board of review.[1] Congress set forth the scope of this intermediate appellate court's authority in Code, supra, Article 66, 10 USC § 866, which provides:

"(b) The Judge Advocate General shall refer to a board of review the record in every case of trial by court-martial in which the sentence, *as*

*approved,* affects a general or flag officer or extends to death, dismissal of a commissioned officer, cadet, or midshipman, dishonorable or bad-conduct discharge, or confinement for one year or more." [Emphasis supplied.]

Basically, the contention before us is that the sentence having been reduced by the board to a level which would not originally have required it to examine the record, or permitted this Court to grant a petition had the case been referred to the board by The Judge Advocate General, we cannot now entertain a petition for review. In short, the argument is that a board of review may in a *nunc pro tunc* fashion defeat further appellate review by approving a penalty which originally would have required only that the record be examined by The Judge Advocate General. Code supra, Article 69, 10 USC § 869.

We cannot subscribe to this interpretation of Code, supra, Article 67. That statute flatly states that this Court is empowered to grant a petition for review upon good cause shown in "all cases reviewed by a board of review." The sole exception to this rule is found in Code, supra, Article 69, and that withdraws the accused's right to petition for review only where the sole basis for the board's authority to review the record is found in the authority of The Judge Advocate General to refer cases to it which he would normally cause only to be examined in his office, *i.e.,* those in which the sentence, as approved, does not involve a general or flag officer, or extend to . a punitive separation from the service or as much as one year's confinement. To say that, by disapproving a punitive discharge or reducing confinement, the board may prevent our review of a case, would require us to disregard the clear language of Code, supra, Article 67, and create judicially another exception to our jurisdiction. In the face of the

---

[1] This is subject, of course, to the exception that we are expressly prohibited from granting accused's petition in those cases which are reviewed by a board only because of reference thereto by The Judge Advocate General rather than because of the adjudged and approved sentence. See Code, supra, Article 69, 10 USC § 369.

plain and unambiguous language of the Article, we cannot resort to such a construction. United States v Dickenson, 6 USCMA 438, 20 CMR 154; United States v Hicks, 6 USMA 621, 20 CMR 337.

Accordingly, we conclude that this Court has jurisdiction to grant accused's petition and review the record of proceedings in his trial without regard to the penalty which the board of review may have found appropriate.

The second issue before us deals with the question whether the specifications under Charges I and II allege offenses. The counts in question aver the attempted sale of promotion examinations and separate conspiracies. They appear in the record as follows:

"Charge I: Violation of the Uniform Code of Military Justice, Article 80

"Specification: In that Farnum T. Reid, boatswain's mate, first class, U. S. Navy, U. S. Naval Receiving Station, Norfolk, Virginia, did, at the U. S. Naval Amphibious Base, Little Creek, Norfolk, Virginia, on or about 5 January 1960, attempt to sell the contents of the February, 1960 Service Wide Competitive Examination for advancement to the rate of boatswain's mate, first class to Raymond (n) Tullas, boatswain's mate, second class, U. S. Navy, the property of the U. S. Government.

"Charge II: Violation of the Uniform Code of Military Justice, Article 81

"Specification 1: In that Farnum T. Reid, boatswain's mate, first class, U. S. Navy, U. S. Naval Receiving Station, Norfolk, Virginia, did, at U. S. Naval Amphibious Base, Little Creek, Norfolk, Virginia, on or about 16 January 1960 conspire with Frank E. Thorsell, chief, commissaryman, U. S. Navy, to commit an offense under the Uniform Code of Military Justice, to wit: selling the contents of the February, 1960 Service Wide Competitive Examination for advancement to the rate of chief, boatswain's mate, the property of the U. S. Government, and in order to effect the object of the conspiracy the said Thorsell did sell said contents, on or about 16 January 1960, for the amount of $300.00, to Warren H. McKenzie, boatswain's mate, first class, U. S. Navy.

"Specification 2: In that Farnum T. Reid, boatswain's mate, first class, U. S. Navy, U. S. Naval Receiving Station, Norfolk, Virginia, did, at the U. S. Naval Amphibious Base, Little Creek, Norfolk, Virginia, on or about 5 January 1960, conspire with Raymond (n) Tullas, boatswain's mate, second class, U. S. Navy, to commit an offense under the Uniform Code of Military Justice, to wit: selling the contents of the February, 1960 Service Wide Competitive Examinations for advancement to the next higher rate, the property of the U. S. Government, and in order to effect the object of the conspiracy the said Tullas did attempt to sell said contents, on or about 8 January 1960, for the amount of about $600.00 to Eddie Schmidt, boatswain's mate, first class, U. S. Navy, and Robert McKee, gunner's mate, first class, U. S. Navy."

Before us, the defense contends that each of the above specifications is defective in that the attempted sale of the examinations and their sale, as variously set forth, are not alleged to have been without proper authority. As lack of authority is an element of the offenses of attempted sale or conspiracy to sell Government property, it is urged that these counts are fatally deficient. The argument is based upon our holdings in United States v Fout, 3 USCMA 565, 13 CMR 121, and United States v Julius, 8 USCMA 523, 25 CMR 27.

In the *Fout* case, the accused was charged with absence without leave, in violation of Code, supra, Article 86, 10 USC § 886. The specification failed to allege that his absence was without proper authority. We held the count fatally deficient, pointing out that an absence may be either authorized or unauthorized and that only the latter is criminal. Failure to allege lack of authority meant that an essential element was not averred and required us

**501**

to conclude that no offense was set forth in the specification.

In the *Julius* case, the accused was charged with alteration of official correspondence. Once again, the count did not negate authority so to act, and we held that absence of the element's allegation was fatal.

It may be granted that United States v Fout and United States v Julius, both supra, require averment of ▉▉▉▉ ▉ lack of authority to commit an act where such is an element of the offense charged. It is nonetheless significant that, in neither case, was it held that such lack of authority must be *expressly* averred. To the contrary, in *Fout*, supra, we pointed out that a specification will withstand attack on appeal if the necessary elements are either expressly set forth or can be found by fair implication from its language. United States v Fout, supra, at page 567. And in United States v Julius, supra, we rested our decision upon the failure of the specification similarly to exclude accused's innocence. Thus, it is not sufficient merely to demonstrate that the specifications do not expressly allege lack of authority to sell Government property. Inquiry must also be made concerning whether such lack of authority can fairly be implied from the terms of each count. United States v Fout, supra; United States v McCall, 11 USCMA 270, 29 CMR 86; United States v Sell, 3 USCMA 202, 11 CMR 202.

Turning to the allegations in question, it is at once apparent that each count fairly sets forth the ▉▉▉▉ ▉ accused's lack of authority to sell the examinations in question. In each instance, it is alleged that accused sold or attempted to sell, on specified dates in *January* 1960, the contents of a service-wide *competitive* examination to be held in *February* 1960. Moreover, in each instance, the sale or attempted sale was directed to a customer who would normally be interested in advancing to the rating alleged to be covered by the particular examination. Thus, the specification of Charge I states that the accused attempted to sell an examination for pro-

motion to boatswain's mate, first class, to Tullas, a boatswain's mate, second class. The specifications of Charge II allege, respectively, conspiracies to sell examinations for advancement to chief boatswain's mate and "the next higher rate" to two boatswain's mates, first class, and a gunner's mate, first class.

In order to reach the result which the defense urges upon us, we would have to assume that the accused was possibly authorized to sell, in advance of a competitive service-wide promotion examination, the questions appearing on those examinations to persons of grades and specialties who would normally be interested in taking the tests. We are unwilling to do so, for, as the board of review noted, possession of such authority "would . . . shock the conscience of law abiding citizens." Rather, we believe that the allegations of sale and attempted sale under such conditions as are set forth in these specifications fairly imply that the accused acted without authority. United States v McCall, supra; United States v Gaskin, 12 USCMA 419, 31 CMR 5. If the accused desired lack of authority to be specified with more particularity, he should have sought such relief at the trial level. United States v Sell, supra. In the absence of such a motion, we cannot now hold that the specifications do not properly allege the essential elements of the offenses purported to be charged.

The third and fourth issues before us involve the sufficiency of the evidence to sustain certain of the ▉▉▉▉ ▉ charges against the accused. We turn, therefore, to the evidence in the record of trial, remembering that it is our province to determine sufficiency of proof only as a matter of law and not as a matter of fact. United States v Brand, 10 USCMA 437, 28 CMR 3.

In late December 1959, or early January 1960, the accused renewed his acquaintance with Raymond Tullas, boatswain's mate, second class, United States Navy, who was stationed at Norfolk, Virginia. Accused asked Tullas if he would like to be promoted to boatswain's mate, first class. Tullas re-

plied in the affirmative, and accused asked if he knew anyone who would be interested in advancing to the grades of chief boatswain's mate and chief gunner's mate. When Tullas stated that he knew such individuals, accused asked him to talk to these men and said he would contact him again later.

Tullas discussed the matter with McKee and Schmidt and found that they were desirous of being promoted to the grade of chief petty officer in the specialties which accused had mentioned. He passed the information on to the accused when the latter telephoned him. Accused told Tullas on this occasion that he could procure copies of the examinations for the three grades in return for the sum of $950.00. Tullas objected to this price, and accused agreed to sell the examinations for $900.00.

Tullas again conferred with McKee and Schmidt. The three men discussed accused's offer and finally decided not to purchase copies of the tests. Tullas intended so to inform the accused but did not hear from him again.

On January 13, 1960, Warren McKenzie, boatswain's mate, first class, United States Navy, was approached by Chief Petty Officer Frank E. Thorsell at the Amphibious Base, Norfolk, Virginia. Thorsell asked McKenzie if he would like to be promoted to chief boatswain's mate "this time" and informed him that he could furnish a copy of the promotion examination scheduled to be given in February 1960. A "fellow from Washington" was to bring the copy down to Thorsell. Thorsell offered McKenzie the opportunity to purchase the examination for $400.00 or to sell both it and a similar item covering advancement in another specialty for $600.00.

McKenzie reported this conversation to agents of Naval Intelligence. He was instructed to accept Thorsell's offer and furnished six fifty-dollar bills with which to consummate the transaction. The bills were dusted with a fluorescent powder which left stains on the hands of those who subsequently handled them, and their serial numbers were recorded. McKenzie notified Thorsell that he was agreeable to the purchase.

On January 16, 1960, McKenzie, pursuant to his arrangement with Thorsell, met that petty officer at a designated building. Thorsell was accompanied by the accused. When McKenzie informed Thorsell he could only raise $300.00, the chief looked at accused who nodded his head. Accused directed McKenzie's attention to a magazine lying on a nearby table. When it was opened, McKenzie found several typewritten pages of questions which purported to be from the competitive examination for promotion to chief boatswain's mate. Accused pointed out that approximately fifteen questions had been omitted because they involved diagrams. He also told McKenzie the names of mutual acquaintances who had attained their ratings through purchase of advance copies of other, similar examinations. McKenzie handed the six fifty-dollar bills to Thorsell and left.

Within a few minutes, Naval Intelligence agents entered the building and apprehended accused and Thorsell. A search of the premises disclosed the presence of the fifty-dollar bills in a drawer. Later examination of the two men's hands revealed stains from the fluorescent powder on the money. A lawful search of accused's nearby automobile turned up several sets of service-wide competitive promotion examinations. A group of such tests pertaining to the ratings of boatswain's mate, first class, chief boatswain's mate, and chief gunner's mate, was found in an envelope bearing accused's name and address, the figures "900," and the name "Tollas." Other examinations were discovered on the accused's person during his interrogation.

Expert testimony established that competitive service-wide promotion examinations are forwarded to commands which have examining boards from the Naval Examining Center, Great Lakes, by registered mail. The sealed boxes in which they are transmitted may be opened only by an officer or warrant officer. Until actually delivered at the proper time to eligible candidates, the examinations must remain in the cus-

**503**

tody of an officer or warrant officer. Each such test is kept in a separate sealed envelope until it is opened by the candidate. The record discloses that the examinations found in accused's car and on his person were copies of the various tests scheduled to be given throughout the Navy in February 1960.

The defense first contends that the evidence is fatally deficient with respect to Charge I and its specification in that accused's actions in connection with Tullas never proceeded beyond the stage of "mere preparation" and could not, therefore, in law, constitute an attempt to sell Government property. We disagree.

True it is that, in order to be guilty of an attempt, the overt acts tending toward commission of the consummated offense must amount to more than mere preparation and constitute at least the beginning of its effectuation. United States v Dominguez, 7 USCMA 485, 22 CMR 275; United States v Johnson, 7 USCMA 488, 22 CMR 278; United States v Choat, 7 USCMA 187, 21 CMR 313. The test, however, by which it is determined whether an accused's behavior exceeds mere preparation, addresses itself to an inquiry whether he has made a direct movement toward committing the offense. Thus, we unanimously noted in United States v Choat, supra, at page 191:

"... The crucial part of this issue is whether the overt acts of the accused transcend preparation and amount to an attempt. In other words, did the accused's conduct constitute a 'direct movement towards the commission of the crime.' Gregg v United States, 113 F2d 687, 690 (CA 8th Cir) (1940), reversed on other grounds, 116 F2d 609; Manual for Courts-Martial, United States, 1951, paragraph 159. The line of demarcation between preparation and a direct movement toward the offense is not always clear. Primarily, the difference is one of fact, not of law. United States v Coplon, 185 F2d 629, 633 (CA 2d Cir) (1950); cert den 342 US 920, 72 S Ct 362, 96 L ed 688."

In the *Choat* case, the accused were charged with attempted housebreaking. The proof demonstrated a meeting at one conspirator's house, surreptitious entry into a military base, discovery in the area of the ship's store, wearing of sneakers, and possession of implements with which an entry could be effected. We had no difficulty in finding that the accused had proceeded beyond mere preparation.

In like manner, we experience no difficulty here. The accused approached Tullas, discussed the subject of promotion, had him find other prospects, and offered to sell promotion examinations. There was some bargaining over the price. When he was finally apprehended, an envelope was discovered in accused's car which bore Tullas' name, figures identical to the sum for which he had offered to sell the three examinations here involved, and the contents of which were copies of three such examinations. The only thing left to be done was consummation of the actual sale and that could be prevented only by Tullas' refusal of the merchandise, a wholly extraneous circumstance then uncommunicated to accused. Indeed, Tullas' statement that he did not intend to go through with the transaction is a factor which the court members might properly have rejected in view of the evidence of his negotiations with the accused and the presence in the car of the promised tests in an envelope bearing Tullas' name. Be that as it may, we pointed out in United States v Johnson, supra, at page 493:

"... The act need not be the ultimate step in the consummation of the crime. Instead, it is sufficient if the act is one which, in the ordinary and likely course of events, would, if not interrupted by extraneous causes, result in the commission of the offense itself."

We are satisfied from the evidence in this case that accused's actions, uninterrupted by his customer's refusals, would have proceeded to an unauthorized sale of the examinations. Accordingly, we are of the view that the quantum of proof found in this record

is sufficient to establish, in law, accused's guilt of attempted sale of Government property. United States v Choat, supra; United States v Johnson, supra.

We must also reject the contention that the evidence is insufficient in law to support findings of █ guilty that accused and Tullas conspired with each other to sell the contents of the 1960 examinations. True it is Tullas testified on cross-examination that he had no "agreement" with the accused. His other testimony belies this conclusion, for he categorically stated that he discussed the subject of promotion and promotion examinations with McKee and Schmidt on two occasions as a result of his conversations with the accused and that a price of $900.00 had been agreed upon between the two for the three examinations. It is equally uncontroverted that the tests were found during the search of the accused's car in an envelope bearing Tullas' name and the figures "900." We believe it was entirely permissible for the court members to infer from these circumstances that accused and Tullas had agreed upon the sale of the examinations and, pursuant to that agreement, the latter had approached Schmidt and McKee. Accordingly, we must hold the evidence legally sufficient to support the findings of guilty of this specification.

With regard to the specification of Charge II alleging that the accused conspired with Thorsell to sell promotion examinations, we must reach a different result. Here, the defense points out that the single overt act set out in the specification is Thorsell's sale of a purported examination to McKenzie. It also points out that the board of review set aside and dismissed the Charge and specification in which the substantive offense of this sale was averred on the basis that the evidence was factually insufficient to establish the authenticity of the examination. From these premises, the defense argues that the record must in like manner be factually insufficient to support proof of the same sale alleged as the overt act in the conspiracy specifications. The Government concedes that the opinion of the board of review is ambiguous in this respect and suggests return of the record for its consideration and possible substitution of one or more of the other overt acts proved in connection with this Charge.

We believe the accused correctly points out that proof of an overt act must be held insufficient █ when, in connection with a separate charge, the board of review finds the evidence insufficient in fact to establish the same act. Compare United States v Hooten, 12 US CMA 339, 30 CMR 339. At the same time, we cannot accept the Government's contention that the difficulty may be resolved by return of the record to the board for possible substitution of another overt act in the specification.

In United States v Yarborough, 1 USCMA 678, 5 CMR 106, this Court rejected precisely that course of action. Regarding a conspiracy charge in that case, we said, at page 685:

". . . While the acts of Marshall might have constituted the overt act in the conspiracy alleged against Yarborough, *the specification was not so drawn*. The Government was required to prove, under each of the specifications concerning Yarborough, that he deliberately allowed himself to be shot by Marshall. This burden was not met." [Emphasis supplied.]

The same rule was laid down by the Circuit Court of Appeals in Fredericks v United States, 292 Fed 856 (CA 9th Cir) (1923), wherein it was stated, at page 857:

". . . Where more than one overt act is charged, the prosecution need not prove all of them; but it is fundamental that some overt act alleged must be proved."

See also, United States v Ault, 263 Fed 800 (WD Wash) (1920), and compare United States v Grunewald, 162 F Supp 626 (SD NY) (1958).

In short, substitution at the board of review level of a new overt act for that alleged in the specification cannot be permitted. United States v Yar-

borough, supra; Fredericks v United States, supra. Otherwise, the Government would be allowed on appeal and before a different judicial body to rummage through the record and select some other act on the part of the accused or Thorsell upon which now to predicate guilt. We hardly believe it should be permitted so to vary its course after it has tried the case upon the allegation of a single, specific act and has run afoul of the board of review's fact-finding powers with respect to that averment. Accordingly, we conclude that specification 1 of Charge II must be dismissed for failure of proof.

The final question of sufficiency upon which we are required to pass regards Charge III and its specification, which alleges that the accused violated Article 1261, United States Navy Regulations, by unlawfully having in his possession copies of service-wide competitive examinations. The mentioned regulations provide that no person in the naval service may have in his possession any property of the United States unless such property is necessary in the performance of his duties or its custody is authorized by proper authority. Counsel for the accused urges us to conclude that the record does not establish that accused's possession of the competitive examinations was unlawful. To reach that result, we would be required to disregard the testimony regarding the security measures utilized to safeguard the examination questions and the rather obvious purpose for which accused had them in his possession. Thus, we point to the statement that these promotion tests were forwarded to naval commands from the Naval Examining Center, Great Lakes, by registered mail and the requirement that they be maintained at all times in the custody of a commissioned or warrant officer. Moreover, the accused's negotiations with Tullas and McKenzie establish beyond cavil that it was his purpose to sell the contents of the examinations to prospective candidates. Under such circumstances, it seems clear that his possession of the examinations was neither necessary in the performance of his duties nor authorized by proper authority. Accordingly, we must hold that the evidence is sufficient in law to establish his violation of the cited directive.

The final issue before us involves the law officer's instructions on maximum sentence. He advised the court-martial that the accused might permissibly be sentenced to dishonorable discharge, confinement at hard labor for twenty-seven years, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The basis for this instruction is found in his apparent determination that the charges relating to conspiracy to sell Government property, attempted sale of Government property, and its sale involved items of a value in excess of $50.00. The Government concedes that this determination was improper and that the charges and specifications involve only property of some value less than $20.00. As value of the examinations was neither alleged nor proven, this concession is proper. United States v Tamas, 6 USCMA 502, 20 CMR 218. Based on the findings of guilty reached at the trial, a correct instruction on the maximum sentence would have extended the possible punishment only to dishonorable discharge, confinement at hard labor for four and one-half years, forfeiture of all pay and allowances, and reduction. Manual, supra, paragraph 127c. The impact of this error may be cured by reassessment of the sentence in light of the approved charges and specifications. United States v Walker, 8 USCMA 38, 23 CMR 262; United States v Crusoe, 3 USCMA 793, 14 CMR 211; United States v Cooper, 2 USCMA 333, 8 CMR 133.

In sum, we conclude that we have jurisdiction to review this case and that the counts under Charge I and Charge II contain sufficient averments to allege an attempt to sell Government property and conspiracy to sell such items. We also find the evidence sufficient in law to sustain the findings of guilty with respect to all of the charges except the specification alleging conspiracy with Thorsell. With respect to that offense, the board of review has factually found

506

the evidence insufficient to establish the single overt act alleged and, accordingly, findings of guilty with respect thereto must be set aside. In view of this action and the concededly erroneous instructions on maximum sentence, the record of trial must be returned to the board of review for reassessment of sentence.

The decision of the board of review is reversed. The findings of guilty with respect to specification 1 of Charge II are set aside, and the specification is ordered dismissed. The record of trial is returned to The Judge Advocate General of the Navy. The board of review shall reassess the sentence in light of the remaining findings of guilty and the erroneous instructions of the law officer.

Chief Judge QUINN and Judge KILDAY concur.