**UNITED STATES**

v.

**Second Lieutenant Dennis M. BEL-
LETT, 278–56–1265, United
States Air Force.**

**ACM 29455.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 26 June 1991.

Decided 9 Nov. 1992.

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens and Captain Richard W. Aldrich.

Appellate Counsel for the United States: Lieutenant Colonel Brenda J. Hollis, Major

Paul H. Blackwell, Jr., and Captain Thomas E. Wand.

Before LEONARD, JAMES, and JOHNSON, Appellate Military Judges.

## OPINION OF THE COURT

JAMES, Judge:

Lieutenant Bellett, a nurse, pleaded guilty to stealing Demerol, wrongfully using it, and signing false records to conceal his thefts.[1] The Demerol[2] was alleged to be "military property." That aggravating factor doubles the maximum punishment which may be adjudged for the larceny. Manual for Courts–Martial (hereinafter MCM), Part IV, paragraph 46e(1) (1984). Now, for the first time, Lieutenant Bellett argues that the military judge defined "military property" incorrectly and that record does not show the Demerol to have been "military property." We disagree. We address two other assignments of error, but, also finding them without merit, we affirm.

### I. "Military Property"

■ The character of the property is not an element of the crime of larceny under Article 121, UCMJ, 10 U.S.C. § 921 (1988). It bears only on the maximum sentence which may be adjudged. While the special character must be alleged, to put the accused on notice of the sentence to which he is exposed by the aggravating circumstance, the larceny conviction in a case like this is as sound without the proof of the character of the property as it is with that proof. Only sentencing is in issue.

The military judge defined "military property" as "any property owned by or intended for use by a military service of the United States." Lieutenant Bellett, on the other hand, now contends that "military property" is more narrowly construed, that property is only "military property" if it has some uniquely military function.

Lieutenant Bellett's analysis of the precedents is superficial, and that leads him to an incorrect conclusion. The maximum punishment is a matter entirely within the discretion of the President to specify under the authority delegated to him by Article 56, UCMJ, 10 U.S.C. § 856 (1988). Most of the punitive provisions of our code permit punishment "as a court-martial may direct," a phrase which arguably authorizes imprisonment for life in every such article. *See, e.g.,* Article 121, 10 U.S.C. § 921. However, the President may use his authority under Article 56 to restrict the punishment discretion of a court-martial. He has done so most recently in his treatise on substantive military criminal law, found at Part IV of the Manual for Courts–Martial, where he has stated maximum punishments for each offense, sometimes according to the presence or absence of aggravating circumstances, just as in this case.

■ Thus, to determine whether Lieutenant Bellett stole "military property" we need look no further than the President's treatise on larceny at MCM, Part IV, paragraph 46. There we find at paragraph 46b(1) a cross-reference which incorporates the definition of the term which is found at paragraph 32c(1), the Executive discussion of wrongful disposition of military property in violation of Article 108, 10 U.S.C. § 908:

> Military property is *all* property, real or personal, owned, held, or used by one of the armed forces of the United States.

Emphasis added. In my view, that ends Lieutenant Bellett's appeal. Despite Lieutenant Bellett's argument, there is no requirement to be found in the President's words that the property have any uniquely military purpose.

However, the remaining judges of this panel are unwilling to rely solely on the plain language of the President's definition. Accordingly, we now examine the

---

1. Violations of Articles 121, 112a, and 107, 10 U.S.C. §§ 912, 912a, and 907 (1988), respectively. He was sentenced to be dismissed, confined for 4 months, and to forfeit $400 of his pay per month for 4 months. The convening authority approved the sentence as adjudged.

2. Demerol contains a controlled substance, meperidine. It is a narcotic analgesic with potential for abuse because it can produce drug dependency of the morphine type. *Physician's Desk Reference* 2312–13 (44th ed.1990).

precedent about "military property." The phrase does have judicial baggage, though almost all of it pre-dates the present Executive definition. Much of that history has involved offenses under Article 108 (wrongful dispositions of property), in which the phrase also appears.

To define "military property" according to the precedent, one first examines ownership. That route is reflected in the nonappropriated fund activity cases. " 'Military' refers to any or all of the armed forces," Article 1(8), UCMJ, 10 U.S.C. § 801(8) (1988), and " '[a]rmed forces means the Army, Navy, Air Force, Marine Corps, and Coast Guard,' " 10 U.S.C. § 101(4) (1988). Though each of the armed forces hosts nonappropriated fund activities that are closely associated with them and which are federal instrumentalities, the property of nonappropriated fund activities has been held not to be "military property." *United States v. Schelin*, 15 M.J. 218 (C.M.A.1983) (retail merchandise held by nonappropriated Army and Air Force Exchange Service Store); *United States v. Ford*, 30 M.J. 871 (A.F.C.M.R.1990) (nonappropriated billeting funds are not military property); *United States v. Underwood*, 41 C.M.R. 410 (A.C.M.R.1969) (Vietnam Regional Exchange retail merchandise was not military property); *United States v. Geisler*, 37 C.M.R. 530 (A.B.R.1966) (unspecified property of an Army officers' club, a nonappropriated fund activity, was not military property). Thus, property that is "owned" by the military excludes that which is owned by nonappropriated fund activities, despite their intimate association with the military.

The precedent is otherwise barren on ownership.

Once one leaves ownership behind, the precedents are less restrictive. The property need not be lethal, an instrument of war, or part of a soldier's kit,[3] nor must it be a supply or store[4] used in warfare. *United States v. Simonds*, 20 M.J. 279 (C.M.A.1985) (camera held by Navy appropriated fund exchange as retail merchandise was military property); *United States v. Reid*, 12 U.S.C.M.A. 497, 31 C.M.R. 83 (1961) (examinations); *United States v. Harvey*, 6 M.J. 545 (N.C.M.R.1978) (undisclosed property held by Navy appropriated fund exchange was military property); *United States v. Busic*, 2 M.J. 1165 (N.M.C.M.R.1975) (Marine Corps exchange building found to be military property); *United States v. Mullins*, 34 C.M.R. 694 (N.B.R.1964) (candy and beer taken from a Navy Exchange vending machine); *United States v. Suthers*, 22 C.M.R. 787 (A.B.R. 1956) (an office); *United States v. Foust and Robarge*, 20 C.M.R. 907 (1955) (electric drill); *United States v. Burrell*, 12 C.M.R. 943 (A.B.R.1953) (sheets, mattress, mattress cover); *United States v. Tomasulo et al.*, 12 C.M.R. 531 (1953) (walls, sinks, plumbing, and windows of a stockade); *United States v. Rivers*, 3 C.M.R. 564 (A.B.R.1952) (camera, lenses, gadget bag). Various decisions on review, several apparently unreported, are summarized by the dissenter in *United States v. Ranguoette*, 79 B.R. 235, 263–68 (1948), and mention divers markers along the spectrum but within the "military" zone: Bed sheets, hospital beds, undershirts, (tent) shelter halves, tent poles, insignia, 391 pounds of

---

**3.** However, it certainly helps if the property is shown to be an item "issued" to soldiers or stocked for that purpose. *United States v. Ford*, 12 U.S.C.M.A. 3, 30 C.M.R. 3 (1960) (navigation watches, boots, flight jackets); *United States v. Blevins*, 34 C.M.R. 967 (A.F.B.R.1964) ("eight sage green blankets"); *United States v. Deevers*, 26 C.M.R. 670 (A.B.R.1958) ("army green uniforms"); *United States v. Waddell*, 23 C.M.R. 903 (A.B.R.1957) (uniform raincoat); *United States v. Edwards*, 2 C.M.R. (A.F.) 690 (1949) (olive drab, flannel uniform shirt).

**4.** Similarly, it makes the "militariness" of the property more apparent if it is shown that the property was stored for a military use, as in *United States v. Kubel*, 1 U.S.C.M.A. 645, 5 C.M.R. 73 (1952) (nine bales of 80 blankets taken from the "evacuation section" of a field hospital in Korea during the war). The nexus draws even closer if the stored equipment is (at least at the time) peculiarly or mainly for military applications, as in *United States v. McKinney*, 1 C.M.R. (A.F.) 625 (1949) (aerial photography camera, gun cameras taken from logistics center), and *United States v. Gavin*, 1 C.M.R. (A.F.) 475 (1949) (Jeep engine taken from supply stocks).

oats, 100 pounds of white lead (for paint), "a new Army khaki shirt," cigarettes and chocolate bars. While the issue in *Ranguoette* was the sufficiency of proof of the origin of the property, and several of the decisions apparently found that proof insufficient, they do not seem to have paused long over "militariness" as an issue distinct from "belonging to the military." As our predecessors observed in *Foust,* "All property held or used by [the Department of the Air Force] from the meanest paper clip to the mightiest bomber has a mediate or immediate military use." 20 C.M.R. at 909. Drugs and medicines used to treat military patients in military hospitals rank well up the mean-mighty scale toward bombers and away from paper clips. If candy, beer, 391 pounds of oats, and the nine bales of 80 blankets taken from the "evacuation section" of a field hospital in Korea in *United States v. Kubel,* 1 U.S.C.M.A. 645, 5 C.M.R. 73 (1952),[5] are military property, surely Demerol is, too.

■ The foregoing two-step analysis echoes that in *Geisler:*

First, all property owned by a military service of the United States is military property of the United States. Second, all property, no matter who owns it, which is furnished to and intended for use by a military service of the United States is military property of the United States.

37 C.M.R. at 532. The *Geisler* analysis remains useful, 25 years later. The military judge's definition was consistent with it, and his definition was correct. Lieutenant Bellett was correctly informed of the nature of the offense to which he proposed to plead guilty and the maximum punishment for it. R.C.M. 910(c)(1).

■ Lieutenant Bellett conceded on inquiry that the Demerol was military property. It developed during the inquiry into the providency of his pleas that the Demer-

ol was taken from a hospital ward where it was kept to be used by patients. Lieutenant Bellett worked on that same ward, in Wilford Hall hospital, a major Air Force medical facility. Lieutenant Bellett's stipulation is even more clear on all these points. There is nothing inconsistent with the plea, and Lieutenant Bellett's stipulation and testimony adequately show that the Demerol was "military property" as that term was defined by the military judge. R.C.M. 910(e), (h)(2).

## II. Tenure & Convening Authority

Lieutenant Bellett also complains that he was denied due process because the judges in the military system lack tenure. That issue was resolved adversely to him during the pendency of his appeal. *United States v. Graf,* 35 M.J. 450 (C.M.A.1992).

■ Finally, Lieutenant Bellett complains that the commander who convened his court-martial lacked authority to do so. The court-martial was convened by the commander of the Air Force Military Training Center at Lackland Air Force Base in Texas. Article 22, UCMJ, 10 U.S.C. § 822 (1988) gives the commanders of some Air Force organizations authority to convene general courts-martial. However, Article 22 does not mention centers. If the commanders of centers are to have convening authority, it must be given to them by the Secretary under Article 22(a)(8) or the President under Article 22(a)(9). As we reminded our community in *United States v. Fairchild,* 33 M.J. 970 (1991), a record of trial must establish jurisdiction:

A court-martial organized under the laws of the United States is a court of special and limited jurisdiction.... To give effect to its sentences *it must appear affirmatively and unequivocally* that the court was legally constituted; *that it had jurisdiction;* that all the statutory regulations governing its proceedings

**5.** *See also* Articles of War 84 (entitled, "Disposition of military property ...") and 94, *reprinted at* Manual for Courts–Martial, U.S. Air Force, 296–97 (1949). The authors of the Articles of War apparently noted that the military services do not hold title in their own names. Instead, title is apparently held in the name of the Unit-

ed States. *Accord,* Article 108, UCMJ, 10 U.S.C. § 908 (1988) ("military property of the United States"). Thus, the President's present definition may be imprecise to the extent that it alludes to property "owned ... by one of the armed forces." Enfeoffment, however, is not the point.

had been complied with, and that its sentence was conformable to law.

*Runkle v. United States,* 122 U.S. 543, 555–56, 7 S.Ct. 1141, 1145–46, 30 L.Ed. 1167 (1887) (emphasis added).

■ Convening orders issued by organizations like centers typically recite the source of the commander's authority to convene a court-martial, and those orders establish prima facie that the court-martial was convened by a commander authorized to do so. *United States v. Goudge,* 39 C.M.R. 324, 329 (A.B.R.1968), *quoted with approval in United States v. Masterman and Charleston,* 22 U.S.C.M.A. 250, 46 C.M.R. 250, 254 (1973). Indeed,

> Trial by the court so created ... may be viewed as having been taken within the purview of the original order, *absent some evidence that the authority has been withdrawn or otherwise dissipated.*

*Masterman,* 46 C.M.R. at 254 (emphasis added). In other words, a convening order that cites to ostensibly valid authority that establishes a commander's authority is prima facie evidence that the commander has the authority he purports to exercise, and the burden shifts to the accused to put the matter into controversy by some showing to the contrary, including some showing that the authority has been withdrawn.

■ In Lieutenant Bellett's case, the 1991 convening order cites a *1988* grant of convening authority. Lieutenant Bellett's appellate defense counsel argues from the disparity that the 1988 grant must have been superseded. Counsel's assertions are not evidence. *See, e.g., United States v. Clifton,* 15 M.J. 26, 29 (C.M.A.1983). Even if we were to accept as true counsel's conclusion, supersession does not establish rescission or withdrawal of the authority

granted in 1988. Thus, Lieutenant Bellett has not met his burden of putting the matter into controversy by some evidence tending to show that the authority established by prima facie evidence had been withdrawn. This assignment is also without merit.[6]

The findings and the sentence are correct in law and fact, and they are

AFFIRMED.

Judge JOHNSON, with whom Senior Judge LEONARD joins, concurring.

Judge JAMES' lead opinion first advances the position that the definition of military property of the United States for sentence enhancement purposes under Article 121 is different from the definition of military property of the United States for substantive offenses under Article 108. This position is based on the fact that the President has broader authority under Article 56, UCMJ to prescribe maximum punishments than he does to alter the elements of specific offenses as they have been elucidated in decisions of the military appellate courts. Therefore, the argument goes, for purposes of sentencing an accused under Article 121 we can rely on the new language in MCM, Part IV, paragraph 32c(1) (1984), which defines military property of the United States more broadly than does previous case law. Many military law practitioners question the effect of the new definition on prosecutions under Article 108, since the President may not have statutory authority to alter the definition of an element of Article 108 offenses as this MCM revision appears to do. The Court of Military Appeals has not yet been asked to decide this issue.

---

**6.** "A simple disparity in dates under these circumstances does not warrant appellate relief from a conviction.... The disparity did warrant further inquiry. It suggested some deficiency ... that *might* have constituted legal error, ... but appellant's counsel should make that inquiry, before the assignment of error. Only after that inquiry can counsel satisfy themselves that there is some factual basis for the argument that they advance." *United States v. Knight,* 33 M.J. 896, 899 (A.F.C.M.R.1991)

(James, J., concurring). A jurisdictional issue is not administrivia, as I characterized the error assigned in *Knight,* but neither is appellant's counsel freed by the jurisdictional aspect to simply spray uninvestigated and unresearched assignments, oblivious to standards for relief on appellate review, scope of review, and burdens for putting a matter into controversy. This sort of practice wastes the time and resources of the opponent and of this Court.

This argument has some appeal, but I am unwilling to rely upon it. The revised definition of military property of the United States appears only in paragraph 32c(1), which discusses Article 108 offenses; it is incorporated by reference in paragraph 46b(1) dealing with Article 121 offenses. I believe giving two different constructions to the same language would introduce a level of complexity which may well defy understanding by many practitioners of military law.

I concur with the lead opinion's conclusion that the medicine stolen by appellant constitutes military property of the United States as defined in existing precedent construing Articles 108 and 121, and with its resolution of the other issues in this case. On that basis, I concur in affirming the findings and sentence.