**UNITED STATES**

v.

**Sergeant Jason H. FIELD, FR559–23–9316, United States Air Force.**

**ACM 29843.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 19 Feb. 1992.

Decided Nov. 19, 1992.

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens, Major Alice M. Kottmyer, and Major Michael C. Barrett.

Appellate Counsel for the United States: Colonel Richard L. Purdon, Lieutenant Colonel Brenda J. Hollis, Lieutenant Colonel Jeffery T. Infelise, Major Paul H. Blackwell, Jr., Major Jeffrey C. Lindquist, Major Kingston E. Smith, and Captain Jane M.E. Peterson.

Before LEONARD, JAMES, and JOHNSON, Appellate Military Judges.

## OPINION OF THE COURT

JAMES, Judge:

This case is about the provision of Manual for Courts–Martial (hereinafter MCM), Part IV, paragraph 46e(1) (1984) that doubles the maximum confinement which may be adjudged for larceny when the stolen property is "military property." Sergeant Field was convicted on his pleas of guilty of larceny of "military property," namely $39,739.26 from a fund used to pay for "commercial services" supplied to the military. Now, for the first time, he disputes whether the stolen money was "military property." If it wasn't, he remains guilty of a larceny, but the sentence might need correction. We hold that the money he took was indeed "military property," and we affirm the findings and the sentence.

### I. The Facts: What Kind of Money?

Sergeant Field worked in the comptroller's office at Grand Forks Air Force Base in North Dakota. His job was "contract maintenance." In his training for that job he learned about an automated payment system for "commercial services." We take notice that "commercial services" are provided to the military through contracts between civilian businesses as the providers and a military agency as the buyer. Sergeant Field noticed the vulnerability of the system to fraud and turned his knowledge to his own benefit.

Sergeant Field invented a fictitious civilian business ("Field Storage") and gave it the necessary but fictitious information needed by the automated payments computer. When it came time to give "Field Storage" a bank account number, Sergeant Field gave the payment system the identifying numbers of his own, personal bank account. It was now possible to inform the payment system of various business transactions between the Air Force and "Field Storage," all fictitious, which led to ostensibly proper but actually fraudulent debts to "Field Storage." Later, he induced the automated system to send six payments to that account, almost monthly from late November 1990 through mid-June 1991, using his insider knowledge to avoid detection. In those instances in which the record discloses the nature of the services being attributed to "Field Storage," they are in the nature of shipments of personal property, the household goods and personal baggage

moves and storage ubiquitous to military life.

Sergeant Field's transactions include the kind of accounting codes and transactional documents that are readily recognizable to most of us in the military, even if beyond the understanding of all but the cognoscenti, like Sergeant Field. He told the military judge, "This particular fund cite is an Army fund cite, so any military has accessibility to this fund cite." Elsewhere he affirmed, "It's military money, sir."

■ We take notice that funds for storage and movement of the personal property of service members are appropriated funds of the United States. That is important because the property of *non* appropriated fund activities has been held not to be "military property." *See generally United States v. Schelin,* 15 M.J. 218 (C.M.A.1983) (retail merchandise of an exchange). We are unable to account for Sergeant Field's belief that the funds were "Army." The funds appropriated "[f]or pay, ... permanent change of station travel ... and expenses of temporary duty travel between permanent duty stations" are appropriated annually in terms that limit their use to the service concerned. *See, e.g.,* Department of Defense Appropriations Act, 1991, Title I, Pub.L. 101–511, 104 Stat. 1856, 1856–57 (1990). The Anti–Deficiency Act prevents expenditure of those appropriations for any purpose other than that for which the funds were appropriated. 31 U.S.C. § 1301 (1988). However, the stipulated facts and Sergeant Field's replies during the providency inquiry are all consistent with the view that the money was an appropriated fund, though, unfortunately, that term is never used. We find nothing improvident in his concession that the money was "military money" in the sense that it was not civilian and not the property of a nonappropriated fund activity. The question remains whether money can ever be "military property" for the purposes of the sentence escalator. Though we have divided on the logic, we agree that it can be.

## II. "Military Property"

■ The character of the property is not an element of the crime of larceny under Article 121, UCMJ, 10 U.S.C. § 921 (1988). It bears only on the maximum sentence which may be adjudged. While the special character must be alleged, to put the accused on notice of the sentence to which he is exposed by the aggravating circumstance, the larceny conviction in a case like this is as sound without the proof of the character of the property as it is with that proof. Only sentencing is in issue. *See United States v. Lingenfelter,* 30 M.J. 302 (C.M.A.1990).

The maximum punishment is a matter entirely within the discretion of the President to prescribe under the authority delegated to him by Article 56, UCMJ, 10 U.S.C. § 856 (1988). Most of the punitive provisions of our code permit punishment "as a court-martial may direct," a phrase which arguably authorizes imprisonment for life in every such article. *See, e.g.,* Article 121, 10 U.S.C. § 921. However, the President may use his authority under Article 56 to restrict the punishment discretion of a court-martial. He has done so most recently in his treatise on substantive military criminal law, found at Part IV of the Manual for Courts–Martial (1984) (hereafter "MCM"), where he has prescribed maximum punishments for each offense, sometimes according to the presence or absence of aggravating circumstances, just as in this case. *See generally United States v. Curtis,* 32 M.J. 252, 260–63 (C.M.A.1991) (discussing Executive authority under Article 56 in context of capital sentencing factors).

Thus, to determine whether Sergeant Field stole "military property" we need look no further than the President's treatise on larceny at MCM, Part IV, paragraph 46. There we find at paragraph 46b(1) a cross-reference which incorporates the definition of the term which is found at paragraph 32c(1), the Executive discussion of wrongful disposition of military property in violation of Article 108:

Military property is *all* property, real or personal, owned, held, or used by one of the armed forces of the United States.

(Emphasis added.[1]) To the extent that the President's definition describes an element of proof of a violation of Article 108, it is "mere commentary." *United States v. Watson*, 31 M.J. 49, 52 (C.M.A.1990). *See also United States v. Church*, 32 M.J. 70, 74 (C.M.A.1991) (Sullivan, J., concurring: "I could not consider such a Manual provision controlling if it conflicted with our case law...."); *United States v. Thompson*, 32 M.J. 65, 67 (C.M.A.1991) (Sullivan, J., concurring: "A presidential regulation cannot dictate the scope or meaning of a congressional enactment such as Article 129...."); *cf. Ellis v. Jacob*, 26 M.J. 90, 92 (C.M.A.1988) (Cox, J.: "[T]he President's rule-making authority does not extend to matters of substantive military criminal law," i.e., a defense). However, as a matter affecting punishment, the President's definition is conclusive. *United States v. Henry*, 35 M.J. 136 (C.M.A.1992).

The President's definition is very broad. It seems evident that it is irrelevant in this case whether the funds were somehow Army funds, for the definition includes the property of *any* of the armed forces, regardless which service might find the thief to be one of its own. The definition is expansive, making clear with traditional legal redundancy that "all property" really means *"all* property," regardless whether real or personal, and presumably without regard to whether it might be tangible or intangible. It would further appear that the nature of the title or interest of the armed force is also irrelevant, for the definition covers everything from bailments ("held") through enfeoffments ("owned")

with an intermediate stop for anything that might be in use by the armed force even though without title, as commandeered property might be. The President's definition would seem to answer Sergeant Field's present concern about whether "military money" disbursed by an Air Force sergeant on the job in the office of an Air Force comptroller to pay for services ostensibly contracted for to facilitate military personnel transfers was "military property," and it is enough for me.

My brothers take a different approach,[2] but they reach the same result. Accordingly, there is no merit to the assignment. Sergeant Field also urged that his sentence is inappropriate, but we disagree. The findings and the sentence are correct in law and fact, and they are

AFFIRMED.

Judge JOHNSON, with whom Senior Judge LEONARD joins, concurring in the result:

I concur in affirming the findings and sentence in this case, but my analysis is somewhat different.

As I understand Judge James' opinion, it takes the position that the definition of military property of the United States for sentence enhancement purposes under Article 121, 10 U.S.C. § 921 is different from the definition of military property of the United States for substantive offenses under Article 108, 10 U.S.C. § 908. This position is based on the fact that the President has broader authority under Article 56, UCMJ, 10 U.S.C. § 856 to prescribe maxi-

1. The President did not overlook the nonappropriated fund cases. A later sentence excludes retail merchandise of nonappropriated fund activities.

2. My brothers interpret the President's definition, *but it seems plain to me, and I find no need to interpret it. Compare Henry*, 35 M.J. at 137 (simply applying President's definition of "firearm"), *with Lingenfelter*, 30 M.J. at 306 ("The Manual provides no guidance [about the meaning of "thereby caused"].") When they do, they review the law under Article 108, as we did exhaustively in *United States v. Bellett*, 36 M.J. 563 (A.F.C.M.R.1992). While the prior judicial interpretations of "military property" might be relevant in an Article 108 case in which the

phrase "military property" is a statutory element of the offense, it is not relevant in an Article 121 case, in which the phrase is an Executive description of a factor which aggravates the maximum punishment, a purely Executive matter. When the President uses a word that has prior judicial baggage, without defining it (as in *Lingenfelter*), it might be necessary to interpret it, and it would then be sensible to attribute to it an intent to use the word as it has been interpreted. Conversely, when the President takes the time to define the word himself (as in *Henry*), then I find it unpersuasive to attribute to the word any baggage that is inconsistent with that definition. The phrase "military property" means what he says it means.

mum punishments than he does to alter the elements of specific offenses as they have been elucidated in decisions of the military appellate courts. Therefore, the argument goes, for purposes of sentencing an accused under Article 121 we can rely on the new language in MCM, Part IV, paragraph 32c(1) (1984), which arguably defines military property of the United States more broadly than does previous case law. Many military law practitioners question the effect of the new definition on prosecutions under Article 108, since the President may not have statutory authority to alter the definition of an element of Article 108 offenses as this MCM revision appears to do. The Court of Military Appeals has not yet been asked to decide this issue.

This argument has some appeal, but I am unwilling to rely upon it. The revised definition of military property of the United States appears only in paragraph 32c(1), which discusses Article 108 offenses; it is incorporated by reference in paragraph 46b(1) dealing with Article 121 offenses.

I believe giving two different constructions to the same language would introduce a level of complexity which may well defy understanding by many practitioners of military law.

The purpose for giving special protection under the UCMJ to military property of the United States is reasonably apparent: loss or harm to such property tends to interfere with the efficiency and effectiveness of the force concerned. The reported cases under Article 108 are not easy to reconcile in every particular, but they have treated as military property of the United States such varied items as a camera held for resale in a Navy appropriated fund ship's store, *United States v. Simonds*, 20 M.J. 279 (C.M.A.1985); and promotion examinations, *United States v. Reid*, 12 U.S.C.M.A. 497, 31 C.M.R. 83 (1961). The only clear exclusion seems to be that the funds and property of nonappropriated fund activities are not within the definition of military property of the United States. *United States v. Schelin*, 15 M.J. 218 (C.M.A.1983).

I have voted to affirm this case on the basis that all funds appropriated by Congress for the use of the armed forces are military property of the United States, for all purposes under Article 108 and Article 121. I would not require the prosecution to prove in individual cases how loss of the funds in question impaired an official function; I would rely on the decision of Congress in appropriating the funds as conclusively establishing that the funds are provided for an official purpose, and that their loss would tend to interfere with military efficiency and effectiveness. Appellant's theft of $39,739.26 in appropriated funds of the armed forces therefore subjects him to punishment for theft of military property of the United States.