UNITED STATES, Appellee,

v.

**Private First Class Wayne H. COLLIER, U.S. Marine Corps, Appellant.**

No. 39,941.
NCM 80 0592.

U. S. Court of Military Appeals.

Jan. 17, 1983.

For Appellant: *Captain Joseph M. Poirier,* USMC (argued); *Lieutenant Henry J. Howard,* JAGC, USNR (on brief).

For Appellee: *Lieutenant Darrell M. Grams,* JAGC, USNR (argued); *Captain T.C. Watson, Jr.,* JAGC, USN, *Lieutenant William C. Martucci,* JAGC, USNR (on brief).

*Opinion of the Court*

FLETCHER, Judge:

Following affirmance below of appellant's general court-martial conviction [1] we granted his petition to decide the following question:

> WHETHER THE EVIDENCE OF RECORD FAILS TO ESTABLISH THE DOING OF THE ALLEGED OVERT ACT TO EFFECT THE OBJECT OF THE AGREEMENT CHARGED AS A CONSPIRACY IN SPECIFICATION 2 OF CHARGE I?

We have examined the law pertaining to this granted issue and determined that our review must focus upon whether the evidence of record shows that an overt act kept the conspiracy alive. Our conclusion is that under the circumstances appellant's departure from the squad bay in company with his co-conspirators was proven and

---

1. Appellant was found guilty of conspiracy to commit robbery and assault; assault with a dangerous weapon; and assault with intent to commit robbery, in violation of Articles 81, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 928 and 934, respectively. His sentence to a dishonorable discharge, total forfeitures, confinement at hard labor for 5 years, and reduction to E–1 was approved and affirmed below.

that its "[s]ubstantial similarity"[2] to the overt act alleged in the specification shows the conspiracy alive and in operation.

The accused and his two companions were overheard while discussing a robbery they had just accomplished. This discussion took place in the barracks of the accused. During the conversation, it became clear that the three participants agreed to go out again to rob other Marines that same evening, based on these statements:

"I'd rather get them while they are walking." They agreed. "I can't wait till payday to get these boots coming in the back gate." The back gate at Camp Geiger is known for that. PFC COLLIER says, "The night is young and they're not all in. Let's go back out." With that, they agreed, stood up, and walked out.

Based on these circumstances, the act of leaving the squad bay constituted an overt act to effect the conspiracy. Accordingly, the accused was properly convicted of conspiracy to commit robbery.

We turn first to general principles.

■ The nature of an overt act necessary for a conviction of conspiracy, in violation of Article 81 of the Uniform Code of Military Justice, 10 U.S.C. § 881, is explained in paragraph 160, Manual for Courts-Martial, United States, 1969 (Revised edition). There it is stated:

The overt act must be an act independent of the agreement to commit the offense. It must be an act done by one or more of the conspirators either at the time of or following the agreement to commit the offense, and done to carry into effect the object of the agreement. The overt act need not be in itself criminal, but it must be a manifestation that the conspiracy is being executed. Thus, a telephone call by a conspirator to the intended victim of a conspiracy to rob, inviting the intended victim to the scene of the intended crime, would constitute

the overt act necessary to complete the offense of conspiracy.

This Court has stated that "[t]he overt act" which must be established to warrant conviction of conspiracy "need not itself be a crime; on the contrary, it can be an entirely innocent act." *United States v. Choat,* 7 U.S.C.M.A. 187, 191, 21 C.M.R. 313, 317 (1956). *Accord, United States v. Rhodes,* 28 C.M.R. 427 (A.B.R.1959), *aff'd,* 11 U.S.C. M.A. 735, 29 C.M.R. 551 (1960). As Chief Judge Quinn went on to explain in *Choat,*

[T]here is no requirement that it pass beyond the stage of preparation so as to amount to an attempt to commit the substantive offense. [Citations omitted.] *All that is required is that the overt act be a "manifestation that the conspiracy is at work."*

(Emphasis added.)

Moreover, in *United States v. Kauffman,* 14 U.S.C.M.A. 283, 34 C.M.R. 63 (1963), Judge Kilday, speaking for the Court, adopted the reasoning of two federal cases to the effect that an overt act is something apart from the conspiracy of agreement. It must be an independent act following the conspiracy; it must be done "to effect the object of the conspiracy." *Marino v. United States,* 91 F.2d 691, 694 (9th Cir.1937), *cert. denied sub nom. Gullo v. United States,* 302 U.S. 764, 58 S.Ct. 410, 82 L.Ed. 593 (1938); *United States v. Grossman,* 55 F.2d 408 (E.D.N.Y.1931).

In *Yates v. United States,* 354 U.S. 298, 334, 77 S.Ct. 1064, 1084–1085, 1 L.Ed.2d 1356 (1957), Mr. Justice Harlan explained the purpose which underlies the need to establish an overt act in conspiracy law as follows:

The function of the overt act in a conspiracy prosecution is simply to manifest 'that the conspiracy is at work,' *Carlson v. United States,* 187 F.2d 366, 370 (10th Cir.1951), and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence.

---

2. *Strauss v. United States,* 311 F.2d 926, 932 (5th Cir.1963), *cert. denied,* 373 U.S. 910, 83

S.Ct. 1299, 10 L.Ed.2d 412 (1963).

The judicial predilection to find an "overt act" in the "slightest" of actions is a reflection of the concern of the criminal law about the often ominous consequences of collective criminal agreements. Mr. Justice Frankfurter expressed his concern in *Callanan v. United States,* 364 U.S. 587, 593–94, 81 S.Ct. 321, 325, 5 L.Ed.2d 312 (1961), as follows:

> [C]ollective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. *In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.*

(Footnote omitted; emphasis added.)

The potential danger resulting from group activity was clear in this case. Here, the accused and his two companions were overheard while discussing a robbery they had just effectuated. This discussion took place in the barracks of the accused (India Company). During the course of the conversation, it became clear that the three participants agreed to go out again with the intent to rob other Marines that same evening. After agreement to undertake another robbery, they departed in mass to commit their crime. We conclude that this constituted an overt "act to effect the object of the conspiracy." Article 81.

But appellant now asserts for the first time that the specific overt act named in the conspiracy specification—that is, actual departure from the Company I barracks—was not proven at trial and that therefore proof of the charge is fatally deficient. Contrarily, the Government urges that a variance between overt acts alleged in the specification and those established at trial is legally permitted. The law supports the Government's position.

Appellant urges that we have ruled in *United States v. Smith,* 20 U.S.C.M.A. 589, 44 C.M.R. 19 (1971), that a conspiracy charge is strictly limited to matters alleged in the specifications. *Smith* does not stand for that categorical interpretation. Proper examination of that case reveals that "separate judicial determinations that" the alleged co-conspirators "were not part of the conspiracy required that the accused's conviction for conspiracy with B . . . and W . . . be set aside." *Id.* at 591, 44 C.M.R. at 21. In that case, the evidence demonstrated that at least 15 persons were parties to the conspiracy, but for reasons not shown in the record, the Government elected to limit its allegation to B and W. A unanimous court remained convinced that there was only one conspiracy.

But appellant's strongest argument is that military law stemming from *United States v. Reid,* 12 U.S.C.M.A. 497, 31 C.M.R. 83 (1961), does not permit a variance between the overt act alleged and the overt act proved at trial. However, we cannot agree with appellant's application of *Reid* to the instant case. Reid was charged, *inter alia,* with conspiracy to sell the contents of the 1960 Navy promotion examination. The overt act alleged was the sale by a co-conspirator of a purported examination to a third party. However, it was shown that a Board of Review had set aside and dismissed the charge and specification in which the substantive offense of this sale was averred on the basis of the failure to establish the examination's authenticity. A unanimous Court held "that proof of an overt act must be held insufficient when, in connection with a separate charge, the board of review finds the evidence insufficient in fact to establish the same act." *Id.* at 505, 31 C.M.R. at 91. Thus, the Court was unwilling to allow return of the record

to the Board so they could rummage through the record in an effort to find and substitute a new discrete act for that alleged in the specification. In the present case, however, this rule does not obtain.

■ Turning to federal authorities, we first note the rule in *United States v. Negro,* 164 F.2d 168, 173 (2d Cir.1947):

[A]n overt act is not part of the crime in the sense that the act alleged must be proved, where another unalleged overt act is proved.

\* \* \* \* \* \*

Consequently, we think the substitution of proof of an unalleged for an alleged overt act does not constitute a fatal variance. At most, such a variance justifies a request for continuance because of surprise.

(Footnote omitted.)

This principle was reaffirmed in *United States v. Armone,* 363 F.2d 385, 400 (2d Cir.1966), *cert. denied,* 385 U.S. 957, 87 S.Ct. 398, 17 L.Ed.2d 303 (1966). It now appears that a general consensus of opinion exists among the Courts of Appeals that the Government is not restricted to proving merely the overt acts alleged in the indictment. *E.g., United States v. Quesada,* 512 F.2d 1043, 1046 (5th Cir.1975), *cert. denied,* 423 U.S. 946, 96 S.Ct. 356, 46 L.Ed.2d 277 (1975); *United States v. Clay,* 495 F.2d 700, 706 (7th Cir.1974), *cert. denied,* 419 U.S. 937, 95 S.Ct. 207, 42 L.Ed.2d 164 (1974); *Napolitano v. United States,* 340 F.2d 313, 314 (1st Cir.1965); *Marcus v. United States,* 20 F.2d 454, 456 (3d Cir.1927), *cert. denied,* 275 U.S. 565, 48 S.Ct. 122, 72 L.Ed. 429 (1927).

It must be remembered that the underlying reason for proof of overt acts is to demonstrate that the conspiracy is alive and in motion. Thus, "[w]hile the commission of an overt act must be alleged and proven, the act itself does not comprise the offense." *United States v. Marks,* 364 F.Supp. 1022, 1028 (D.Ky.1973), *aff'd,* 520 F.2d 913 (6th Cir.1975), *rev'd on other grounds,* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). The following language figured prominently in our *Reid* decision: "[I]t is fundamental that some overt act alleged must be proved." *Fredericks v. United States,* 292 F. 856, 857 (9th Cir. 1923), quoted in *United States v. Reid, supra.* This principle is no longer considered viable in light of new criminal statutes and Fed.R.Crim.P. 52(a). A variance between a single overt act averred in an indictment and the act proved at trial may constitute harmless error beyond a reasonable doubt. *Brulay v. United States,* 383 F.2d 345 (9th Cir.1967), *cert. denied,* 389 U.S. 986, 88 S.Ct. 469, 19 L.Ed.2d 482 (1967).

As the Fifth Circuit expressed the rule: "Substantial similarity between the facts alleged in the overt act and those proved is all that is required." *Strauss v. United States,* 311 F.2d 926, 932 (5th Cir.1963), *cert. denied,* 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412 (1963).

Furthermore, the Government need not prove every overt act alleged. *United States v. Williams,* 474 F.2d 1047 (5th Cir. 1973); *United States v. Fellabaum,* 408 F.2d 220, 223 (7th Cir.1969), *cert. denied,* 396 U.S. 858, 90 S.Ct. 125, 24 L.Ed.2d 10 (1969).

■ Turning to the sufficiency of the evidence presented in the instant case regarding the overt act in furtherance of the conspiracy, we must view it in the light "most favorable to the Government." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Once the conspiracy to commit larceny had been agreed upon by the co-conspirators, proof of the overt act of leaving the squad bay—under these evidentiary circumstances—sufficed to indicate that the conspiracy was alive. That the act of leaving the barracks itself was not as specifically alleged in the specification constitutes mere harmless error beyond a reasonable doubt. Moreover, we conclude that the "[s]ubstantial similarity" between the overt act of leaving the squad bay and allegedly leaving the barracks meets the requirements of *Strauss v. United States, supra.*

The decision of the United States Navy Court of Military Review is affirmed.

Judge COOK concurs.

EVERETT, Chief Judge (dissenting):

Among other things, appellant was charged in two specifications with conspiracy, in violation of Article 81 of the Uniform Code of Military Justice, 10 U.S.C. § 881. The military judge acquitted him of one specification but found him guilty of the other, which alleged:

In that Private First Class Wayne H. COLLIER, U.S. Marine Corps, Company I, 3d Battalion, 8th Marines, 2d Marine Division, Fleet Marine Force, Camp Lejeune, North Carolina 28542, did at Camp Lejeune, North Carolina, on or about 20 July 1979, conspire with one or more black males, whose identity is unknown, to commit offenses under the Uniform Code of Military Justice, to wit: robbery and assault of Marines returning to Camp Geiger; and in order to effect the object of the conspiracy, the said Private First Class COLLIER left the Company I barracks in company with two unidentified black males.

It is the finding of guilty on this charge with which our Court is now concerned.

Before appellant's pleas of not guilty were entered, his civilian defense counsel moved to dismiss this specification and pointed out:

IC: The specification in its present form alleges a conspiracy. And in attempting to allege an overt act performed pursuant to the conspiracy, which is a requirement for this offense, in order to effect the object of the conspiracy the—COLLIER left the company barracks in company with two unidentified black males. Now, the Manual in paragraph 160, indicates that the overt act which is a part, an integral part of the offense of conspiracy. The overt act must relate to some legitimate object of the conspiracy, or must relate to a manifestation that the conspiracy is being executed. Now, this overt act, as alleged in the specification, is consistent with anything in the world. It is as innocuous as if the allegation had been "did take a breath," "did walk a step," and certainly does not satisfy the requirements of paragraph 160 of the Manual,

that it is related to, directly related to, the conspiracy, or constitutes a manifestation that the conspiracy is being executed. And we respectfully submit that it is deficient in that respect.

The judge reserved his ruling on this motion.

After the Government presented its evidence, the defense moved for a finding of not guilty as to this same specification, defense counsel contending:

With regard to Specification 2, I don't think anything much needs be said about it. It's interesting to note somehow or other that there was some kind of conspiracy and—but that's not the end of the requirement for sufficiency on that specification. It's got to have some meaningful act done pursuant to that conspiracy, and it said, "in order to effect the object of the conspiracy ... COLLIER left the..." building. And we respectfully submit that if they proved that he left the building it wouldn't have been sufficient. But we would look very carefully back over our evidence. As far as the government is concerned COLLIER is still in the building. Nobody ever proved that he left the building. And certainly we can't assume it. So that Specification 2 doesn't deserve any comment at all.

After denial of this motion, defense counsel made a similar argument before findings.

Under Article 81 of the Code, the prosecution must establish an overt act—that "one or more of the conspirators does an act to effect the object of the conspiracy." The Manual discussion of conspiracy notes that "[t]he overt act need not be in itself criminal, *but it must be a manifestation that the conspiracy is being executed.*" Para. 160, Manual for Courts-Martial, United States, 1969 (Revised edition). (Emphasis added). *Accord,* para. 160, Manual for Courts-Martial, United States, 1951. *See also Cramer v. United States,* 325 U.S. 1, 7, 65 S.Ct. 918, 921, 89 L.Ed. 1441, 1446 (1945); *Chavez v. United States,* 275 F.2d 813, 817 (9th Cir. 1960).

For the reasons expressed by the defense counsel, I believe the specification is of

questionable sufficiency to allege an overt act. Moreover, apart from any variance, the evidence at trial simply was insufficient to establish the required overt act. The fact that three men walked out of a squad bay in a Marine Corps barracks is not an adequate "manifestation that the conspiracy is being executed." One reason for the overt-act requirement is that it serves as evidence that the conspiracy exists and is in operation. However, an act as neutral as that which was relied on by the Government in the case at bar does not suffice for this purpose, since there is no indication that any of the alleged conspirators "looked to it to aid in the accomplishment of the crime." *Chavez v. United States, supra* at 817.

Accordingly, I dissent and would set aside the finding of guilty on this specification of conspiracy.