*126 GIERKE, Chief Judge
(concurring in part and dissenting in part):
I dissent from my colleagues’ treatment of Issues I and II; however I join Judge Erdmann’s separate opinion concurring in the result on Issue III.

ISSUE I

No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.[1]
I respectfully dissent from the majority opinion because changing the overt act by exceptions and substitutions resulted in a material variance, which altered the very nature of the offense, such that Appellant was denied this fundamental principle of due process.
The Manual for Courts-Martial describes the two distinct elements of conspiracy:
(1) That the accused entered into an agreement with one or more persons to commit an offense under the code; and
(2) That, while the agreement continued to exist, and while the accused remained a party to the agreement, the accused or at least one of the co-conspirators performed an overt act for the purpose of bringing about the object of the conspiracy.[2]
Thus, the overt act is an essential element of the offense, which must be alleged and proven beyond a reasonable doubt. In this case, the military judge, without any notice to the accused, announced findings by exceptions and substitutions to overt acts that were not alleged in, or implied by, the specification charged. The alteration of the charge by the military judge constituted a fatal variance in the pleadings and materially prejudiced Appellant’s ability to defend against the charge of conspiracy.
Appellant was originally charged with conspiracy to provide alcohol to persons involved in the delayed entry program. Two specific overt acts were alleged in the specification: (1) purchasing beer at a service station, and (2) transporting that beer to the [T] residence.
After hearing all the evidence, the military judge found Appellant not guilty of the overt acts alleged. The military judge then proceeded, by exceptions and substitutions, to find Appellant guilty of two new, distinct overt acts, namely that: (1) Appellant, Staff Sergeant Teffeau, and [JK] agreed to drive to the Winfield City Lake to drink beer at the lake, and (2) they then drove to the lake in two separate cars and drank beer. The specification as amended by the military judge’s announced findings focused on two allegations of fact: an agreement to drive to the lake and drinking beer at the lake. The charge originally alleged made absolutely no mention of either of these allegations.
The majority quotes United States v. Hunt, which states, “To prevail on a fatal-variance claim, appellant must show that the variance was material and that it substantially prejudiced him.”[3] An accused can show prejudice from a material variance in several ways. One way includes a showing of a due process violation “where he was ‘misled to the extent that he has been unable adequately to prepare for trial ... or where the variance at issue changes the nature or identity of the offense and he has been denied the opportunity to defend against the charge.’ ”[4]
Appellant and his counsel prepared a defense and presented evidence to refute the overt acts alleged by the Government. This defense was directed at demonstrating that the overt acts alleged occurred before any criminal agreement took place. Specifically, Appellant presented evidence at trial that the purpose of purchasing beer at a service station was for consumption during that week *127 end’s football playoff games. The military judge’s verdict indicates that Appellant and his counsel were successful in their defense to the offense as alleged.
In United States v. Collier, this Court held “[a] variance between a single overt act averred in an indictment and the act proved at trial may constitute harmless error beyond a reasonable doubt.”[5] “ ‘Substantial similarity between the facts alleged in the overt act and those proved is all that is required.’ ”[6] In Collier, this Court concluded the proven overt act of leaving the squad bay was substantially similar to the alleged overt act of leaving the barracks in furtherance of the agreement to rob junior Marines at the back gate of Camp Geiger.[7] The terms “squad bay” and' “barracks” are sometimes used synonymously. A person standing in the squad bay of a squad-bay type of barracks has to leave the squad bay before he or she can exit the barracks. Thus, the act of leaving the squad bay was included in and implied by the act alleged, leaving the barracks.
This case is distinguishable from Collier. Here, the alleged overt acts of buying beer and traveling to a private residence, which Appellant successfully defended against, are not substantially similar to, included in, or implied by the substituted acts of driving to a lake and drinking a beer at the lake. The changing of the overt act element of the conspiracy charge did not constitute harmless error. On the contrary, it altered the language of the alleged overt act element in a manner which produces a material variance. Appellant was substantially prejudiced by this material variance because he was denied the opportunity to defend against the charge. Appellant was successful in preparing and presenting a defense to the crime charged by the Government. He should have had an opportunity to prepare a defense to the substantially different charge created by the military judge when he announced his findings of guilt.
The majority’s decision on Issue I is particularly troublesome because it focuses on the fact that Appellant did not object to the announcement of the verdict. The majority therefore concludes that the military judge’s error in altering the nature of the charge is waived by the failure to object unless the error is deemed to be plain or “clear” error.
I have not been able to find any criminal case from any jurisdiction which places a requirement on the defendant to object to the verdict in order to preserve a legal issue for appeal. Indeed, the entry of a plea of not guilty should provide ample notice that a defendant would oppose and object to any findings of guilt. I therefore disagree with any notion that an accused is expected to object to findings of guilt after they are announced. Appellant did not waive this issue by a failure to object to the announcement of findings and the error warrants reversal.
Accordingly, I respectfully dissent.

ISSUE II

I also dissent from the majority decision to overrule United States v. McOmber,[8] because doing so will “utterly defeat the congressional purpose of assuring military defendants effective legal representation without expense.”[9] McOmber held that “once an investigator is on notice that an attorney has undertaken to represent an individual in a military criminal investigation, further questioning of the accused without affording counsel reasonable opportunity to be present renders any statement obtained involuntary under Article 31(d) of the Uniform Code.”[10] This also includes “questioning with regard to the accused’s future desires with respect to counsel as well as his right to remain silent, for a lawyer’s counseling on these two matters in many instances may be the most *128 important advice ever given his client.”[11] The McOmber rule was codified in the Military Rules of Evidence and titled “Notice of Counsel.” It read:
When a person subject to the code who is required to give warnings under subdivision (c) intends to question an accused or person suspected of an offense and knows or reasonably should know that counsel either has been appointed for or retained by the accused or suspect with respect to that offense, the counsel must be notified of the intended interrogation and given a reasonable time in which to attend before the interrogation may proceed.[12]
In 1994, the President amended M.R.E. 305(e) to remove the McOmber notice requirement.[13] McOmber was a statutorily based decision, and the underlying statute, Article 27, UCMJ, has not changed. “The President ... cannot overrule or diminish an Act of Congress via the promulgation of rules of procedure. Likewise, the President cannot overrule or diminish our interpretation of a statute.”[14] Thus, Article 27, UCMJ, and our decisions interpreting and applying it “reign[ ] preeminent over anything propounded by the President.”[15]
The majority bases its conclusion that the President can overrule McOmber on the idea that McOmber was not an application and interpretation of Article 27, UCMJ, but rather an attempt to ensure that Article 27, UCMJ, was administered in a manner consistent with parallel developments in civilian constitutional law. The majority apparently draws this conclusion from the reference to constitutional “overtones” in the McOmber opinion.[16] It is important to put that phrase in context to understand that the decision was directly based on Article 27, UCMJ. What this Court said was, “Although the question presented has certain constitutional overtones, our disposition of the matter on statutory grounds makes it unnecessary to resolve the Sixth Amendment claim.”[17] Judge Cook’s concurring opinion is even more explicit in rejecting any notion that civilian constitutional precedent was being followed. Judge Cook cites two federal cases which have allowed questioning without counsel’s presence and then states, “As the principal opinion observes, however, our cases have leaned squarely in the opposite direction. It may, indeed, be time to prescribe the strong medicine of explicit disapproval.” [18] Accordingly, the majority opinion’s conclusion that McOmber was crafted to follow developments in constitutional law is contradicted by the very language of the McOmber decision.
In many instances servicemembers are afforded more rights in the criminal justice system than their civilian counterparts.[19] For example, the rights advisement required by Article 31, UCMJ,[20] predates Miranda v. Arizona[21] by sixteen years, and the protections afforded servicemembers by Article 31, UCMJ, are, in some respects, even more expansive than those required by Miranda.[22] *129 Similarly, this Court, focusing on the differences between a court-martial and a civilian jury trial, has held that a military defendant is entitled to “a reasonable, racially neutral explanation” for a prosecutor’s challenge of a minority member of a court-martial, while a civilian defendant is not.[23]
The majority opinion fails to recognize that McOmber was based on the interpretation of a statute crafted by Congress to address special military circumstances. As Congress recognized in drafting Article 31, UCMJ, it is appropriate that more protection be afforded to servicemembers in the interrogation setting than to their civilian counterparts because of the characteristically coercive nature of the military. The prophylactic rule announced in McOmber was intended to ensure the right to effective assistance of counsel set forth in Article 27, UCMJ, and to extend that right to servicemembers facing an interrogation into allegations of misconduct.
The recognition that the military environment is inherently coercive is substantiated by the very facts of this case. It cannot be ignored that Appellant, with the assistance of counsel, was able to successfully invoke his rights in several attempted interrogations by civilian police, but eventually agreed to waive his rights when confronted by a military superior for the second time. The military setting, the influence of rank, and the absence of the assistance of counsel almost certainly created an environment in which Appellant’s ability to invoke the rights previously asserted was compromised.
The rights afforded by Article 27, UCMJ, and McOmber are separate and distinct from the constitutional rights addressed in Minnick v. Mississippi[24] and McNeil v. Wisconsin.[25] The change to M.R.E. 305(e), removing the McOmber protections prior to preferral of charges, was enacted to apply Minnick and McNeil.[26] But, in the military environment, counsel rights extending beyond those in civilian society are particularly important. Our country has soldiers, sailors, airmen, and marines deployed in every corner of the globe for extensive periods of time. In these remote areas, they may find themselves facing investigations into allegations of criminal conduct for months, even years, before a charge can be preferred.[27] These young men and women deserve unique protections to ensure that they receive the effective assistance of counsel in the unique circumstances they face as a result of their military service. McOmber is based on military-specific statutory provisions designed to protect this important right to counsel rather than the constitutional provisions involved in Minnick and McNeil. Since a change in a rule cannot supplant a statute, including a statutorily based judicial decision,[28] the attempt to overrule McOmber by amending the Military Rules of Evidence should fail. Accordingly, I dissent from the majority’s decision to overrule McOmber, based on the holdings of Minnick and McNeil, and the changes to M.R.E. 305(e). I would also overrule those portions of M.R.E. 305(e) which are inconsistent with McOmber.
In addition to overruling McOmber, the majority alternatively concludes that Appellant waived any McOmber protections that *130 he was afforded. In reaching this conclusion, the majority relies on United States v. LeMasters, which found a proper waiver of McOmber rights.[29] Because I concurred in LeMasters, I think it is important to note the significant factual distinctions between that case and this one.
The appellant in LeMasters contacted the Office of Special Investigations (OSI) office on his own accord on four separate occasions without requesting counsel, and he made statements each time.[30] In LeMasters, prior to taking the appellant’s statement, a special agent in the OSI office instructed the appellant to contact his attorney, and the agent provided the appellant with an office, a phone, and the phone number of the area defense counsel’s office.[31] The interrogation proceeded only after LeMasters returned to the agent and indicated that he had spoken with counsel and desired to continue without counsel present.[32]
In stark contrast to LeMasters, who initiated four separate discussions with law enforcement, Appellant here never initiated an interrogation session and, through counsel, declined to speak with the Winfield City Police Department. In furtherance of law enforcement’s continuing effort to successfully interrogate Appellant, Detective Shaw, the civilian police officer, worked with Captain (CPT) Montgomery, the military officer investigating Appellant. Detective Shaw told CPT Montgomery that Appellant was represented by a “hot shot lawyer.” Detective Shaw, who had been unable to question Appellant because of his invocation of rights, provided CPT Montgomery with a list of questions to ask. On March 12, 1997, CPT Montgomery, without making any effort to contact Appellant’s lawyer or to give Appellant the opportunity to do so, gave Appellant the standard rights acknowledgment warning and obtained a waiver of Appellant’s Miranda rights and Article 31, UCMJ, rights.[33]
The Court in LeMasters ruled that the Appellant had waived his rights because “there is no evidence of police overreaching or badgering or attempting to surreptitiously deprive appellant of the right to counsel. Rather, this is a case in which appellant intended to give a statement ... to the OSI agents. This discourse was initiated by appellant and not by the agents.”[34]
The facts of this case indicate that Appellant had no desire to be interrogated and would not have done so absent the repeated law enforcement efforts to subvert his invocation of rights. In LeMasters, law enforcement recognized and protected the accused’s McOmber rights. In the instant case, law enforcement ignored and attempted to maneuver around the undisputed fact that Appellant was represented by counsel. These facts support the rationale for McOmber, not the majority’s decision to overrule that important military case. I therefore respectfully dissent.

. Cole v. Arkansas, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644(1948).

. Manual for Courts-Martial, United States pt. IV, para. 5.b. (2005 ed.)(MCM).

. 37 M.J. 344, 347 (C.M.A.1993).

. United States v. Teffeau, 58 M.J. 62, 67 (C.A.A.F.2003) (quoting United States v. Lee, 1 M.J. 15 (C.M.A.1975)).

. 14 M.J. 377, 380 (C.M.A.1983).

. Id. (quoting Strauss v. United States, 311 F.2d 926, 932 (5th Cir.1963)).

. See id.

. 1 M.J. 380 (C.M.A.1976).

. Id. at 383 (citing Article 27, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 827 (2000)).

. Id.

. Id.

. Military Rule of Evidence (M.R.E.) 305(e) (1994).

. M.R.E. 305(e) (2005).

. United States v. Kossman, 38 M.J. 258, 260-61 (C.M.A.1993).

. Id.

. McOmber, 1 M.J. at 382.

. Id. (emphasis added).

. Id. at 383 (Cook, J., concurring) (emphasis added and quotation marks omitted).

. See United States v. Warner, 62 M.J. 114, 121 n. 31 (C.A.A.F.2005), which states:
In defining the rights of military personnel, Congress was not limited to the minimum requirements established by the Constitution, and in many instances, it has provided safeguards unparalleled in the civilian sector. United States v. Mopes, 59 M.J. 60, 65 (C.A.A.F.2003) (quoting United States v. McGraner, 13 M.J. 408, 414 (C.M.A.1982) (quotation marks omitted)); see, e.g., Francis A. Gilligan, The Bill of Rights and Service Members, 1987 Army Law. 3, 10 (Dec.1987) (servicemembers’ rights broader than constitutionally required).

. 10 U.S.C. § 831 (2000).

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. H.F. “Sparky” Gierke, The Use of Article III Case Law in Military Jurisprudence, Army Law., Aug. 2005, at 25, 36.

. United States v. Tulloch, 47 M.J. 283, 287 (C.A.A.F.1997) (declining to follow the Supreme Court’s holding in Purkett v. Elem, 514 U.S. 765, 769, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), that the explanation for the challenge need not ”make[] sense”).

. Minnick v. Mississippi, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) (holding that once a suspect has requested counsel, interrogators may not reinitiate questioning unless the attorney is present, regardless of whether or not there has been an outside consultation).

. McNeil v. Wisconsin, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) (finding that the assertion of the Sixth Amendment right to counsel did not imply an assertion of the Miranda right to counsel).

. Manual for Courts-Martial, United States, Analysis of the Military Rules of Evidence app. 22 at A22-15 through A22-16 (2005 ed.).

. See United States v. Wattenbarger, 21 M.J. 41, 42-45 (C.M.A.1985) (finding a pre-preferral right to counsel in a situation where a sailor stationed overseas was facing allegations of criminal behavior for four months prior to preferral of any charges).

. Kossman, 38 M.J. at 260-61.

. 39 M.J. 490, 493 (C.A.A.F.1994).

. Id. at 491.

. Id.

. Id.

. The standard “Miranda waiver" should not equate to a waiver of McOmber rights because, as we pointed out in McOmber, the notification to counsel was required prior to "questioning with regard to the accused’s future desires with respect to counsel as well as his right to remain silent, for a lawyer’s counseling on these two matters in many instances may be the most important advice ever given his client.” 1 M.J. at 383.

. 39 M.J. at 492 (quotation marks omitted).